# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ODELL DEPRIEST CRAWFORD,

Civil No. 11-2918 (JRT/FLN)

Plaintiff,

v.

STATE OF MINNESOTA,

Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT & RECOMMENDATION OF MAGISTRATE JUDGE DATED OCTOBER 6, 2011**

Odell DePriest Crawford, 207607, 7109 NBU, Prague, OK 74864, *pro se*.

David C. Brown, Assistant Hennepin County Attorney, **HENNEPIN COUNTY ATTORNEY'S OFFICE**, A-2000 Government Center, 300 South 6th Street, Minneapolis, MN 55487; and Matthew Frank, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, St Paul, MN 55101, for defendant.

In 2001, Odell Depriest Crawford ("Crawford") was convicted in state district court for Hennepin County on three counts of criminal sexual conduct. Crawford filed a habeas corpus petition with this Court in June 2004 challenging his conviction. *See Crawford v. Minnesota*, 04-2822, 2005 WL 1593038, at *1 (D. Minn. July 1, 2005). The petition was dismissed on the merits with prejudice. *Id.* at *3. In October 2011, Crawford filed a new habeas petition based on evidence he discovered in 2006. (Pet. for Writ of Habeas Corpus, Oct. 4, 2011, Docket No. 1.) This evidence was previously suppressed by the state. *Crawford v. Minnesota*, No. A09-1373, 2010 WL 2899131, at *2 (Minn. Ct. App. July 27, 2010). On October 6, 2011, United States Magistrate Judge

Franklin L. Noel issued a Report and Recommendation ("R&R") recommending that the Court dismiss without prejudice Crawford's writ of habeas corpus for lack of jurisdiction. (R&R, Docket No. 5.)  Specifically, the Magistrate Judge held that Crawford had filed a "second or successive" petition for habeas corpus, and was thus required to seek authorization from the court of appeals before filing the petition.  (*Id.* at 6-7.)  Having conducted a *de novo* review of the R&R, *see* 28 U.S.C. § 636(b)(1)(C), D. Minn. L.R. 72.2(b), and having carefully reviewed the submitted materials, the Court overrules Crawford's objections and adopts the R&R in its entirety.

## BACKGROUND[1]

In late 2006, Crawford learned that his DNA sample had erroneously become involved in an unrelated criminal case.  *Crawford*, 2010 WL 2899131, at *1.  The Bureau of Criminal Apprehension (BCA) analyst who testified in his original trial had mistakenly transferred Crawford's DNA sample to a different defendant's sample, and had concealed this fact from Crawford.  *Id.* at *1-2.

Crawford petitioned the state court for post-conviction relief based on the newly-discovered evidence about his DNA.  According to Crawford, the unprofessional handling of his DNA sample casts doubt on whether the DNA evidence in his trial was likewise tainted.  (Pet. for Writ of Habeas Corpus at 7-9.)  He claims that DNA evidence was "at the heart" of his conviction and that the prosecutor had told the jury that it was "very important corroborating evidence" to support the victim's testimony.  (*Id.* at 8.)

---

[1] A more thorough factual background is available in the R&R.

Crawford's attorneys support his argument, stating that their legal advice regarding Crawford's defense would have "differed substantially" and been "more likely to produce an acquittal" if they had been aware of the DNA error because "criminal juries are very concerned about the accuracy of DNA testing . . . ."   (Objection to Report and Recommendation, Ex. A-10, A-12, Dec. 12, 2006, Docket No. 6.)[2]

The state court agreed with Crawford that "the evidence of the BCA error [regarding Crawford's DNA] is favorable to Crawford and was suppressed by the original BCA analyst." *Crawford*, 2010 WL 2899131, at *2.  The court did not grant Crawford a new trial based on this suppressed evidence, however, because "the DNA evidence was not material and was not prejudicial." *Id.* at *3.  Specifically, the court held that there was sufficient evidence to support Crawford's conviction without the DNA evidence and that the record showed no testing error affecting Crawford's DNA sample even if the error affected a different defendant's sample. *Id.*

Crawford has now filed a new habeas corpus petition with this Court based on the alleged mishandling of his DNA.  He claims that his constitutional rights were violated because (1) the prosecution failed to disclose the erroneous use of his DNA sample, and (2) he was denied a fair trial because this evidence was not made available to him.  (Pet. for Writ of Habeas Corpus at 3.)  In Crawford's *pro se* objections to the R&R, he largely

---

[2] According to another of Crawford's attorneys from his criminal trial, "The County Attorney knows that when there is an actual mistake of this magnitude it really impresses the jury.  In cases where this has happened in the past I can recall one dismissal, two acquittals (one where the jurors called the county attorney and said that lab errors were the crucial issue) and in . . . several others probation and no more time in jail . . . [The state] tried to cover this up because it is a very big mistake . . . ."  (Objection to Report and Recommendation, Ex. A-7.)

repeats the claims in his petition and asks the Court to consider evidence that, he argues, was deliberately concealed by the BCA analyst. (Objection to Report and Recommendation at 1-10.)

## ANALYSIS

### I. SECOND OR SUCCESSIVE PETITION

#### A. AEDPA's Language

The Court must determine if it has jurisdiction to hear this action under the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, a district court may not hear a habeas petition without preauthorization from the court of appeals if the petition is "second or successive." 28 U.S.C. § 2244(b)(3)(A). "The phrase 'second or successive' is not self-defining." *Panetti v. Quarterman*, 551 U.S. 930, 943 (2007). Neither AEDPA nor the Eighth Circuit has explicitly defined this term, so the Court must consider whether AEDPA's language sheds light on its meaning. The Court finds that AEDPA's language suggests that Crawford's petition is "second or successive."

AEDPA contemplates that at least some "second or successive" petitions will be based on evidence that a habeas petitioner could not have previously discovered or raised, at no fault of the petitioner. Specifically, AEDPA states that, for a petitioner to avoid dismissal of new claims brought in a "second or successive" habeas petition, the petitioner must show that "**the factual predicate for the claim could not have been discovered previously** through the exercise of due diligence." 28 U.S.C.

§ 2244(b)(2)(B) (emphasis added).[3]   Through this provision, AEDPA anticipates that second or successive petitions may include claims that could not have been discovered previously.[4]   If the discovery of new facts alone could render a petition not "second or successive," "the preauthorization requirement of § 2244(b)(3)(A) would be meaningless."   *See Martin v. Benson*, Civil No. 11–347, 2011 WL 4537848, at *4-8 (D. Minn. Sept. 30, 2011) (explaining distinctions between successive and non-successive habeas petitions).   Stating that petitions based on new facts are not "second or successive" if those facts were previously unavailable would allow an "end run" around AEDPA's preauthorization requirement.   *See id.* at *6 (internal quotation marks omitted). Because Crawford's petition is based on facts that could not have been discovered before the filing of his former petition, the language of AEDPA suggests that it might be "second or successive."

## B.   AEDPA's Purposes and Habeas Jurisprudence

Because the plain language of AEDPA is not conclusive, the Court must also consider (1) habeas jurisprudence defining the term "second or successive" and (2) the "principles of comity, finality, and federalism" underlying AEDPA.   *See Panetti*, 551 U.S. at 943, 945.   The Court will first discuss situations where, through the consideration

---

[3]   These newly-discovered facts must also be sufficient to establish by clear and convincing evidence that but for the error, no reasonable juror would have found petitioner guilty.   *Id.*

[4]   A second or successive petition can also avoid dismissal if the petition relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable.   28 U.S.C. § 2244(b)(2)(A).   This consideration does not apply to this case.

of these factors, courts have held that certain second-in-time petitions are not "second or successive." *See Williams v. Hobbs*, Nos. 10-1573, 10-2899, 2011 WL 4634227, at *9 (8th Cir. Oct. 7, 2011) ("Not all second-in-time habeas petitions are 'second or successive.'"). Then the Court will explain why, in this case, policy and precedent lead to the conclusion that Crawford's petition is "second or successive."

### 1.      Petitions Challenging Continuing Confinement

Certain second-in-time habeas petitions are not "second or successive." Specifically, additional habeas petitions are not necessarily "second or successive" if they are based on new developments relevant to a prisoner's continuing confinement. *See Martin*, 2011 WL 4537848, at *8.[5]   The Eighth Circuit concluded, for example, that a habeas petition challenging a new involuntary medication order imposed upon a prisoner was not "successive" where the medication order was issued after the prisoner filed his previous habeas petition. *Singleton v. Norris*, 319 F.3d 1018, 1023 (8th Cir.), *cert. denied*, 540 U.S. 832 (2003) (citing *In re Cain*, 137 F.3d 234, 236-37 (5th Cir. 1998)). Similarly, the Supreme Court concluded that a prisoner's claim that he was incompetent to be executed was not "successive" where the claim of incompetency arose after the prisoner filed his previous habeas petition. *Panetti*, 551 U.S. at 945. *Singleton* and *Panetti* both involved challenges to a prisoner's continuing confinement based on developments that occurred after the filing of previous habeas petitions.

---

[5] *See Martin*, 2011 WL 4537848, at *8 ("The real reason that the current Petition is non-successive is that it is based on new law and facts and the claims presented in the Petition do not challenge the validity of the original commitment order, but only challenge Petitioner's continuing confinement in light of the alleged new law and facts.").

These decisions were supported by prior habeas jurisprudence and AEDPA's policy considerations. *See id.* at 947; *Singleton*, 319 F.3d at 1023. Because Section 2244(b) commands dismissal of "second or successive" petitions absent certain exceptions not present in these cases, the prisoners would likely have received no habeas review of any kind for their new claims if their petitions were classified as "second or successive." *See* 28 U.S.C. § 2244(b). Completely barring the review of habeas claims that were previously unripe is a "troublesome result" and courts have refused to "close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent." *See Panetti*, 551 U.S. at 946. Because Congress did not clearly intend to bar the review of petitions based on such new developments relevant to a prisoner's continuing confinement, courts have not classified these petitions as "second or successive."[6]

These decisions did not address challenges to a prisoner's underlying conviction based on new evidence. The Court must now determine if the rationale underlying these decisions applies with equal force to petitions, like Crawford's, based on newly-discovered evidence relevant to a prisoner's original conviction.

---

[6] Furthermore, the precedential value of labeling such petitions as "second or successive" – and thereby barring federal review – would have been to encourage prisoners to file unripe claims with their first habeas petitions, based on evidence that does not yet exist and may never exist. *Id.* Encouraging this behavior would waste judicial resources, foster piecemeal litigation, and delay federal habeas proceedings. *Id.*

### 2.   Petitions Challenging Underlying Conviction

Unlike cases based on later-in-time developments challenging a petitioner's confinement, the Court finds that Crawford's petition is "second or successive."  First, Eighth Circuit case law, both before and after the passage of AEDPA, suggests that petitions challenging underlying convictions because of evidence previously suppressed by the state are "second or successive."  *See Tyler v. Purkett*, 413 F.3d 696, 705 (8th Cir. 2005) (indicating, in dicta, that habeas petitions based on evidence previously concealed by the state are "second or successive"); *Fairchild v. Lockhart*, 979 F.2d 636, 640 (8th Cir. 1992) (analyzing a new application based on evidence previously unavailable because of prosecutorial misconduct as "a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." (internal quotation marks omitted)).

Second, AEDPA's purposes support labeling Crawford's petition as "second or successive."  Defining petitions like Crawford's as "second or successive" lends finality to state court judgments and safeguards the accuracy of state court judgments by requiring the resolution of constitutional questions while the record is fresh.  *See Panetti*, 551 U.S. at 945 (quoting *Day v. McDonough*, 547 U.S. 198, 205-06 (2006)).  Because petitions challenging underlying convictions will often involve evidence that arose years in the past, concerns about finality and a fresh record weigh more heavily in Crawford's case than for petitions based on more recent developments relevant only to a prisoner's continuing confinement.  Furthermore, labeling Crawford's petition as "second or successive" does not completely deprive Crawford of judicial review of his new evidence, but merely applies a higher bar to whether the Court will overturn his

conviction.[7]   *See* Part I(C), *infra*; *Panetti*, 551 U.S. at 945-46 (considering whether petitioners have "forever los[t] their opportunity for any federal review of their unexhausted claims.") (internal quotation marks and citation omitted)).   Accordingly, the Court finds that AEDPA's purposes and language, as well as Eighth Circuit precedent, require identifying Crawford's petition as "second or successive."

### C.    State Misconduct

The Court recognizes that applying AEDPA's preauthorization requirement to claims arising from state misconduct might encourage misbehavior on behalf of prosecutors and other state actors.  *See United States v. Lopez*, 577 F.3d 1053, 1064-65 (9th Cir. 2009) (noting that subjecting claims based on the state's withholding of evidence to the "second or successive" standard will "reward prosecutors for failing to meet their constitutional disclosure obligations").

If Crawford's claim of misconduct had been presented in his first habeas petition, he would have been entitled to a new trial "if there [was] a **reasonable probability** that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (emphasis added) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Brady v. Maryland*, 373 U.S.

---

[7]   As described above, Crawford can obtain preauthorization from the Court of Appeals if he can make a prima facie showing that "(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."   28 U.S.C. § 2244(b)(2)(B), (b)(3)(C).

83, 87 (1963).  In contrast, AEDPA imposes a higher standard to avoid the dismissal of claims presented in "second or successive" habeas petitions.  Such petitions must be dismissed unless "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to **establish by clear and convincing evidence that**, but for constitutional error, **no reasonable factfinder would have found the applicant guilty of the underlying offense.**"  28 U.S.C. § 2244(b)(2)(B)(ii) (emphases added).[8]  Accordingly, if Crawford's habeas petition is labeled as "second or successive," his claims will be subject to a high gatekeeping standard because the state did not inform him of suppressed evidence until after his first habeas petition.

Although this result is troubling, the Court will nonetheless treat Crawford's petition as "second or successive" in light of the Eighth Circuit's suggestions to this effect and because Crawford is not wholly deprived of federal review of his claim should he comply with the preauthorization requirement.[9]  As the Ninth Circuit has observed, there is no easy solution to how courts should treat second-in-time claims based on state misconduct under AEDPA.  *Lopez*, 557 F.3d at 1065.  While it may seem unfair for courts to impose high gatekeeping standards to facts that prisoners could not have

---

[8] "If [§ 2244(b)(2)(B)] applies literally to every second-in-time *Brady* claim, federal courts would be unable to resolve an entire subset of meritorious *Brady* claims: those where petitioner can show the suppressed evidence establishes a reasonable probability of a different result and is therefore material under *Brady*, but cannot, under [§ 2244(b)(2)(B)'s] more demanding prejudice standard, show that the evidence establishes by **clear and convincing evidence** that no reasonable juror would have voted to convict petitioner."  *See Lopez*, 577 F.3d at 1064 (emphasis added).

[9] The Suspension Clause is no barrier to Congress' decision to limit habeas relief in this manner.  *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (holding that AEDPA's "new restrictions on successive petitions" do not violate the Suspension Clause).

previously discovered, particularly when these facts are concealed by the state, Congress chose to implement these standards when it enacted AEDPA.  Accordingly, the Court holds that Crawford's habeas petition is "second or successive" and, prior to its filing with this Court, must obtain authorization from the Court of Appeals.

## II.    APPLICATION TO PROCEED IN FORMA PAUPERIS

Because the Court agrees that this matter should be dismissed without prejudice, the Court also adopts the Magistrate Judge's recommendation that Crawford's application to proceed in forma pauperis (IFP) be denied.  *See Kruger v. Erickson*, 77 F.3d 1071, 1074 (8th Cir. 1996) (noting that IFP application should be denied where court cannot entertain habeas petition).  Crawford may re-apply for IFP status if he files a notice of appeal.

## CERTIFICATE OF APPEALABILITY

A district court may issue a certificate of appealability only where an applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000).  To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the issue must deserve further proceedings.  *See Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994).

Although the Court has determined that petitioner's § 2254 motion should be dismissed as a second or successive petition, the Court will grant Crawford a certificate of appealability on the limited issue of whether habeas claims arising from evidence

previously concealed by the state are subject to AEDPA's preauthorization requirement under 28 U.S.C. § 2244(b)(3).  Circuit courts have treated this issue differently, and the Eighth Circuit has not analyzed this issue in any detail.  *Compare Lopez*, 577 F.3d at 1064 (suggesting that such claims may not be subject to AEDPA's clear and convincing standard, without deciding the issue) *with Evans v. Smith*, 220 F.3d 306, 323-25 (4th Cir. 2000) (holding that such claims are subject to AEDPA's preauthorization requirement). It is possible that the Eighth Circuit would determine on appeal that AEDPA's preauthorization requirement does not apply to Crawford's claims.  *See Crouch v. Norris*, 251 F.3d 720, 725 (8th Cir. 2001) ("'[S]econd or successive' remains a term of art that must be given meaning by reference to both the body of case law developed before the enactment of AEDPA and the policies that prompted AEDPA's enactment."); *Panetti*, 551 U.S. at 945 ("[T]he practical effects of our holdings[] should be considered when interpreting AEDPA.").

The Court concludes that Crawford has made the required substantial showing of the denial of a constitutional right because it is debatable whether his constitutional claims should be subject to AEDPA's preauthorization requirement.  Accordingly, the Court grants a certificate of appealability on the issue of whether Crawford's habeas claims are subject to AEDPA's preauthorization requirement under 28 U.S.C. § 2244(b)(3).

If Crawford wishes to file for preauthorization and to appeal this decision, he must (1) move the court of appeals for an order authorizing the district court to consider his habeas petition under 28 U.S.C. § 2244(b)(3)(A), **and** (2) appeal the instant order to the

court of appeals on the issue of whether his habeas claims are subject to AEDPA's preauthorization requirement.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 6] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 6, 2011 [Docket No. 5]. Accordingly, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED**.

2.   Petitioner's application for leave to proceed in forma pauperis in District Court [Docket No. 2] is **DENIED**; and

3.   This action is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**IT IS FURTHER HEREBY ORDERED** that pursuant to 28 U.S.C. § 2253(c) the Court **GRANTS** petitioner a Certificate of Appealability with respect to the limited issue of whether Crawford's 28 U.S.C. § 2254 claims arising from evidence previously concealed by the state are subject to AEDPA's preauthorization requirement under 28 U.S.C. § 2244(b)(3).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 5, 2012                     ___s/ John M. Tunheim___
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                          United States District Judge